STATE OF CONNECTICUT *v.* ROBERT WHITE
(AC 18015)

Hennessy, Sullivan and Daly, Js.

Argued June 3—officially released October 26, 1999

*Cameron Dorman*, special public defender, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Eva Lenczewski*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Robert White, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the first degree in

violation of General Statutes § 53a-70 (a) (1).[1] On appeal, the defendant claims that the trial court improperly (1) found that the state presented sufficient evidence to sustain the verdict, (2) instructed the jury on the element of lack of consent, (3) admitted statements made by the defendant under the admissions exception to the hearsay rule and (4) admitted evidence that the defendant had used an alias. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was the brother-in-law of the victim's best friend and was known to the victim from prior social gatherings. On the evening of July 6, 1996, the defendant arrived at the victim's residence unannounced. The victim, a thirty-two year old female, was home with one of her daughters. The defendant was very upset and crying because he and his wife had been arguing. He explained to the victim that his wife had banished him from their residence, and that he had been sleeping at work and in his truck and needed a shower. The victim admitted the defendant into her residence and allowed him to use the shower. She did not feel threatened by the defendant because she knew him.

After showering, the defendant stated that he needed a place to sleep, and the victim told him that he could stay for one week and sleep on a couch. Shortly thereafter, the defendant informed the victim that he was leaving to attend a party. The defendant did not return until 9:30 the following morning.

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

On July 7, 1996, after the victim's daughter left to visit with her father, the defendant and the victim began discussing his marital problems. As the conversation progressed, the defendant began what the victim described as sexual talk and offered to give the victim a massage, which she declined. Later that day, the defendant resumed the "sexual talk" in a suggestive tone that caused the victim to feel uncomfortable. At one point, the victim went outside to avoid the defendant. The defendant followed her, however, and continued talking in a sexually suggestive manner. The victim ignored him but felt he was staring at her. The defendant again sought to give the victim a massage and she again refused.

The victim went back inside and was followed by the defendant. The defendant approached the victim from behind and began groping her and fondling her breasts. The victim asked, "[W]hat are you doing?" and the defendant pushed her onto the couch, pinning her arms behind her. In the process, the defendant fell onto the couch with her, and his weight and leverage held the victim against the couch, rendering her immobile. The defendant had a "very mean look" on his face, removed the victim's shorts, forcibly held her legs down and performed cunnilingus on her. After the defendant stopped, he stood and started to remove his clothing. The victim was dazed when she got up from the couch and tried to walk toward the bathroom, but the defendant guided her into the bedroom, pushed her onto the bed and engaged in vaginal intercourse.

During this ordeal, the victim was horrified and experienced great pain. Finally able to free herself, she ran into the bathroom and ordered the defendant to leave. The victim was initially reluctant to contact the police, fearing that the defendant would harm her. After contacting a friend and a rape crisis center, she notified the police later that same day.

The defendant, who had four prior felony convictions,[2] admitted at trial that he performed cunnilingus and engaged in vaginal intercourse with the victim, but claimed that their encounter was consensual. The jury found the defendant guilty of two counts of first degree sexual assault. This appeal followed.

I

The defendant first claims that the trial court improperly denied his motion for judgment of acquittal. Specifically, he claims that the state presented insufficient evidence to establish the element of lack of consent.[3] We do not agree.

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jacques*, 53 Conn. App. 507, 520, 733 A.2d 242 (1999).

In the present case, the defendant was charged with violating § 53a-70 (a) (1) by compelling the victim to

[2] The defendant had been convicted of two counts of first degree robbery in 1985 and two weapons charges in 1991 and 1995.

[3] We note that lack of consent is not an element of first degree sexual assault under § 53a-70 (a). *State* v. *Coleman*, 52 Conn. App. 466, 469, 727 A.2d 246, cert. denied, 249 Conn. 902, 732 A.2d 776 (1999). Pursuant to § 53a-70 (a) (1), the state must prove that " 'the defendant (1) compelled the victim to engage in sexual intercourse (2) by use of force or threat of force.' " Id. The lack of consent, however, "is implicit" where forcible compulsion is established beyond a reasonable doubt. *State* v. *Clinkscales*, 21 Conn. App. 411, 419, 574 A.2d 243, cert. denied, 215 Conn. 815, 576 A.2d 545 (1990). We will therefore review the defendant's claim as one asserting that there was insufficient evidence to establish that the defendant compelled the victim to engage in sexual intercourse by the use of force.

engage in cunnilingus, which constitutes sexual intercourse as defined by General Statutes § 53a-65 (2),[4] by the use of force,[5] and by compelling the victim to engage in vaginal intercourse by the use of force. At trial, the victim testified extensively as to the events at issue and described how the defendant used his superior strength to restrain her while sexually assaulting her. Although the defendant testified that the victim consented, we note that it is "the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *Jacques*, supra, 53 Conn. App. 521. "We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 313, 715 A.2d 1 (1998). "If evidence . . . should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction." (Internal quotation marks omitted.) *State* v. *Roy*, 38 Conn. App. 481, 488, 662 A.2d 799 (1995), cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996). The jury, therefore, was entitled to believe the testimony of the victim regarding the defendant's use of force.

After reviewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have concluded from the facts and

---

[4] General Statutes § 53a-65 provides in relevant part: "As used in this part, except section 53a-70b, the following terms have the following meanings . . .

"(2) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. . . ."

[5] General Statutes § 53a-65 (7) provides in relevant part: " 'Use of force' means . . . (B) use of actual physical force or violence or superior physical strength against the victim."

the inferences reasonably drawn therefrom that the evidence established beyond a reasonable doubt that the defendant compelled the victim to submit to both vaginal intercourse and cunnilingus by the use of force. Therefore, the trial court properly denied the defendant's motion for judgment of acquittal because the evidence was sufficient to establish that the defendant was guilty of sexual assault in the first degree.

## II

The defendant next claims that the trial court improperly instructed the jury on the element of lack of consent. This claim is without merit.

We note that in his brief, the defendant concedes that he did not request a charge or take exception to the charge given to the jury. He now seeks review of this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] We conclude that the defendant's claim does not satisfy the third condition of *Golding*.

"An accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt. . . . This court has consistently held that a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial." (Internal quotation marks omitted.) *State* v. *Delgado*, 50 Conn. App. 159, 170, 718 A.2d 437

---

[6] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

(1998). Based on the foregoing and because the record is adequate for review, we conclude that the first two conditions of *Golding* have been satisfied.

We must, however, review the third requirement of *Golding* to determine whether the alleged constitutional violation clearly exists and whether the defendant was deprived of a fair trial. "[U]nder . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) Id., 171.

In the present case, the defendant contends that the jury instruction was improper because the jury was "misled to believe that the victim must 'actual[ly]' or 'truly' consent" to sexual intercourse.[7] As we previously

___

[7] The court began instructing the jury by reading the relevant portion of § 53a-70 (a) (1) almost verbatim. The court further instructed the jury: "For you to find the defendant guilty of [sexual assault in the first degree] the state must prove the following elements beyond a reasonable doubt. Number one, that the defendant compelled another person [the victim] to engage in sexual intercourse, and number two, that the sexual intercourse was accomplished by the use of force against [the victim]." After providing the

noted, however, first degree sexual assault does not include, as an element of that offense, the lack of consent.[8] Furthermore, "[t]he fact that any act engaged in under compulsion would necessarily be nonconsensual; *State* v. *Esposito*, 192 Conn. 166, 172–73, 471 A.2d 949 (1984); does not impose upon the court a duty to instruct the jury on consent as if it were . . . a statutory element. The statutory definition of the crime, which in plain language requires that it be the use of force or the threat of the use of force which serves to compel another person to engage in sexual intercourse, is sufficient, in and of itself, to consider whether the victim, in fact, consented to the act." (Internal quotation marks omitted.) *State* v. *Mackor*, 11 Conn. App. 316, 324, 527 A.2d 710 (1987).

After reviewing the trial court's instructions to the jury as a whole, we conclude that they were a correct statement of the law. The court's charge informed the jury of the elements of the crime of first degree sexual assault. Indeed, in *State* v. *Bouier*, 44 Conn. App. 548, 553 n.3, 554–55, 690 A.2d 889, cert. denied, 241 Conn. 903, 694 A.2d 40 (1997), we previously upheld a similar jury instruction and rejected a claim similar to the one raised by the defendant in the present case. Accordingly, we conclude that it was not reasonably possible

---

statutory definition of sexual intercourse, the court continued: "Compelled has its ordinary meaning. It means that the victim does not consent and that the defendant must have required the victim to engage in sexual intercourse against her will. . . . The state must prove it beyond a reasonable doubt that the defendant compelled the victim . . . to engage in sexual intercourse by the use of force against [the victim]. Use of force means that the defendant must have used actual physical force or violence or superior physical strength to compel the victim to submit to sexual intercourse. If you find that the victim consented to the act of sexual intercourse, you cannot find that the act was compelled. Consent must have been actual and not simply acquiescence brought about by force, by fear or by shock. The act must have been truly voluntary on the part of the victim. Consent may be expressed or you may find it was implied from the circumstances that you find existed. Whether there was consent is a question of fact for you to determine."

[8] See footnote 3.

that the jury was misled. We further conclude that the alleged constitutional violation does not clearly exist, and that the defendant's claim, therefore, fails to satisfy the third requirement of *Golding.*

## III

The defendant's third claim is that the trial court improperly admitted under the admissions exception to the hearsay rule statements he made to the investigating officer regarding a sexual compulsion problem. We do not agree.

Additional facts are necessary for the resolution of this claim. On the day following the sexual assault, the defendant went to the Naugatuck police station and voluntarily provided a written statement concerning the incident. The police had not summoned or requested that the defendant come to the station, nor had they questioned him regarding the incident or the victim's complaint. The defendant testified that he went to the police station after his wife informed him that the victim had telephoned and made accusations that she had been sexually assaulted by the defendant.

Laura Harrison, a detective with the Naugatuck police department, testified that when asked why he came to the police station, the defendant provided the same explanation to her. Harrison further testified that upon arrival at the station, the defendant was observed to be "extremely upset, extremely nervous," and spent approximately two hours writing his statement and that "it seemed like he struggled to go through it." In addition, Harrison testified as to oral statements made by the defendant while he was at the police station, in which he admitted having sexual compulsion problems. Specifically, Harrison testified that the defendant stated that he "has a real problem with sex . . . needs to have it all the time and can't help himself or control himself." Harrison also testified that the defendant told her that

he was experiencing marital problems as a result of his sexual compulsions and infidelity.

The trial court admitted the testimony concerning the defendant's statements regarding his sexual compulsions pursuant to the party admission exception to the hearsay rule. The defendant objected on the grounds that the testimony was irrelevant and "more highly prejudicial than probative under the circumstances." The court found that the testimony's probative value outweighed the prejudice.

"An out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." (Internal quotation marks omitted.) *State* v. *Barnett*, 53 Conn. App. 581, 604, 734 A.2d 991, cert. denied, 250 Conn. 918, 738 A.2d 659 (1999). "The words and acts of a party-opponent are generally admissible against him [or her] under the admission exception." (Internal quotation marks omitted.) *State* v. *Spivey*, 53 Conn. App. 652, 654, 736 A.2d 153, cert. denied, 249 Conn. 928, 738 A.2d 653 (1999). Indeed, "[t]he statements made out of court by a party-opponent are *universally deemed admissible* when offered against him . . . so long as they are *relevant and material to issues in the case.* Although the theories for admissibility differ, the vast weight of authority, judicial, legislative, and scholarly, supports the admissibility *without restriction* of any statement of a party offered against that party at trial." (Emphasis in original; internal quotation marks omitted.) *In re Jessica B.*, 50 Conn. App. 554, 571–72, 718 A.2d 997 (1998). "An admission, as applied to criminal cases, is the avowal or acknowledgment of a fact or of circumstances from which guilt *may* be inferred, and only *tending* to prove the offense charged, but not amounting to a confession of guilt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Spivey*, supra, 654.

In the present case, the central issue at trial was whether the defendant compelled the victim to engage in sexual intercourse by the use of or by the threat of use of force. The defendant's statements concerning his sexual compulsion and self-control problems clearly were relevant, material and highly probative on the issue of whether he compelled the victim to engage in sexual intercourse. "The trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. *State* v. *Joly*, 219 Conn. 234, 253, 593 A.2d 96 (1991)." (Internal quotation marks omitted.) *State* v. *Spivey*, supra, 53 Conn. App. 655.

After reviewing the record, transcript and briefs, we conclude that the trial court did not abuse its broad discretion concerning evidentiary matters by admitting into evidence the defendant's statements as an admission of a party opponent.

## IV

The defendant's final claim is that the trial court improperly admitted evidence concerning his use of an alias. This claim is without merit.

Additional facts are necessary for our resolution of this claim. The state informed the court and the defendant that if the defendant testified it intended to inquire on cross-examination as to his use of another name to identify himself. The defendant filed a motion in limine in an effort to prevent the state from pursuing that line of questioning. As the court had not yet ruled on that motion before the defendant testified, defense counsel renewed the motion prior to the state's cross-examination of the defendant. Defense counsel argued that the defendant's use of an alias should not be heard by the jury because he had not used the alias for a deceitful purpose. The court denied the defendant's motion and

permitted the state to inquire as to the defendant's use of other names. The court further stated that defense counsel could "rehabilitate" the defendant.

The state asked three questions of the defendant concerning two names he had used. Specifically, the state inquired as to whether the defendant had ever used the names Robert Gensler and Robert White, and when he switched from Gensler to White. The defendant testified that he was once known as Robert Gensler but went to Probate Court and changed his name back to White, his birth name, because he and his wife wanted to name their son Robert A. White III. Defense counsel did not conduct redirect examination.

"When a witness voluntarily testifies . . . he asks the jury to believe him. The jury should be informed about the sort of person asking them to take his word. . . . Matters which might not be strictly relevant on direct examination may be so on cross-examination where that matter is explored for the purpose of credibility. Given that function of cross-examination in shedding light on the credibility of the witness' direct testimony, [t]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness and assessing the probative value of the direct testimony. . . . A question is within the scope of the direct examination if it is intended to rebut, impeach, modify or explain any of the defendant's direct testimony . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 224 Conn. 196, 207, 618 A.2d 494 (1992).

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling . . . .

*State* v. *Sullivan,* 244 Conn. 640, 653, 712 A.2d 919 (1998). Our review of evidentiary rulings is limited. Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . *State* v. *Alvarez,* 216 Conn. 301, 306, 579 A.2d 515 (1990); see also *State* v. *Robinson,* 227 Conn. 711, 732, 631 A.2d 288 (1993); *State* v. *Boles,* 223 Conn. 535, 549, 613 A.2d 770 (1992)." (Internal quotation marks omitted.) *State* v. *Shehadeh,* 52 Conn. App. 46, 50, 725 A.2d 394 (1999).

In the present case, the defendant testified on direct examination that the victim consented to sexual intercourse, which contradicted testimony that the encounter was not consensual. As a result, a central question before the jury was the credibility of the witnesses. The state is entitled, on cross-examination, to pursue matters not strictly relevant on direct examination where those matters are pursued for the purpose of credibility. *State* v. *Hernandez,* supra, 224 Conn. 207. The state's inquiry on cross-examination into the defendant's use of other names was, therefore, within the scope of the defendant's direct testimony.

While we note that " 'the term "alias" has come to connote in the public mind some previous criminal activity . . . [and] [i]f that [is] true, the constant repetition of the word "alias" might well produce a mental reaction unfavorable to a defendant which, if unexplained by him, could make the presumption [of innocence] of doubtful value' "; *State* v. *Peary,* 176 Conn. 170, 178, 405 A.2d 626 (1978), cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979); such is not the case here. In the present case, there was no constant repetition or reference to the defendant's use of another name and there was an unchallenged explanation by the defendant that provided a plausible and legitimate

reason for legally changing his name. Such an explanation, we conclude, sufficiently removed any unfavorable predisposition that may have existed in the minds of the jury toward the defendant.

After reviewing the record and transcript, we conclude that the trial court did not abuse its discretion in admitting the evidence concerning the defendant's use of an alias because the state's questions were appropriate to assist the jury in assessing the defendant's credibility.

The judgment is affirmed.

In this opinion the other judges concurred.