## STATE OF CONNECTICUT v. TODD BRANHAM
### (AC 18065)

Foti, Spear and Cretella, Js.

Argued November 2, 1999—officially released January 18, 2000

---

*Jayne F. Kennedy,* assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Laura D. DeLeo,* assistant state's attorney, for the appellee (state).

*Opinion*

CRETELLA, J. The defendant, Todd Branham, appeals from the judgment of conviction, rendered after a jury trial, of four counts of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21 and one count of assault in the third degree in violation of General Statutes § 53a-61,[1] claiming that (1) the trial court improperly denied his motion for judgment of acquittal on counts three, four and five of the substitute information because there was insufficient evidence to support the conviction, and (2) that § 53-21 is unconsti-

---

[1] Although the defendant was convicted of one count of assault in the third degree in violation of § 53a-61 and four counts of risk of injury to a child in violation of § 53-21, on appeal he presents issues that relate only to his conviction on the three counts of risk of injury to a child that were based on allegations that he placed children under the age of sixteen in a situation where their lives, limbs or health were likely to be injured or their morals impaired. Accordingly, our discussion will be limited to the defendant's claims as to three of the four risk of injury counts.

General Statutes (Rev. to 1993) § 53-21 provides in relevant part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired . . . shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

tutionally vague on its face and as applied to the facts of this case. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant is the father of three children, Tyjuan, Robert and Demetrius. At the time of the incident in question, all of the children were under the age of four. During the early evening hours on September 25, 1993, the children's mother, Robin Moorehead, had requested that the defendant, who did not reside with Moorehead and the children, watch the children while she went out for approximately one hour. Upon her return after about one hour, Moorehead discovered that although the children were asleep in their beds, the defendant was not in the apartment. Moorehead was told by individuals who were in the hallway of the apartment building that the defendant had left the apartment as soon as she had left. Once she ascertained that the defendant had left the apartment shortly after she did, leaving the three children alone with no other adult in the apartment, Moorehead called and filed a report with the New Haven police department.

I

The defendant claims first that the court improperly denied his motion for judgment of acquittal on counts three, four and five because there was insufficient evidence to support his conviction. We disagree.

"The standards by which we review claims of insufficient evidence are well established. When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Jacques*, 53 Conn. App. 507,

520, 733 A.2d 242 (1999)." (Internal quotation marks omitted.) *State* v. *White*, 55 Conn. App. 412, 416, 740 A.2d 399, cert. denied, 252 Conn. 908, 743 A.2d 621 (1999).

In the present case, the defendant left his three young children unattended in their apartment for approximately one hour and subsequently was charged with violating § 53-21, which applies where an individual wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered or the child's health is likely to be injured. In support of his insufficiency claim, the defendant argues that there was no evidence as to the length of time that the children were left alone. The defendant cannot prevail on that argument, however, because the amount of time the children were left unattended is not a necessary element of the offense. Moreover, even if it were a necessary element, the jury reasonably could have inferred from the testimony of the children's mother that the children had been left alone for as long as one hour. We note further that it is "the absolute right and responsibility of the jury . . . to determine the credibility of the witnesses. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Citation omitted; internal quotation marks omitted.) Id., 417. The jury, therefore, was entitled to believe the mother's testimony regarding the length of time the children were unattended.

Furthermore, the jury reasonably could infer that the children, ages three and one-half, two and one, were seriously at risk of likely injury to their health or that their lives or limbs were endangered when they were left unattended in the apartment. There was sufficient evidence for the jury to conclude beyond a reasonable doubt that the physical well-being of the children was put at risk when the defendant left them in a dangerous

situation, i.e., alone in the apartment, thereby exposing them to injury.[2]

Viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have concluded from the facts and the inferences reasonably drawn therefrom that the evidence established beyond a reasonable doubt that the defendant subjected the children to a risk of injury. Therefore, the court properly denied his motion for judgment of acquittal as to counts three, four and five of the substitute information.

## II

The defendant's second claim is that § 53-21 is unconstitutionally vague on its face and as applied to the particular facts of this case. We disagree.

While this claim was not preserved at trial, we will review it under the guidelines set forth in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[3] because the claim of unconstitutional vagueness implicates the fundamental due process right to fair warning of the applicability of § 53-21. See *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973). As a general rule, when a statute is attacked as void for vagueness, its validity is deter-

---

[2] Aside from the common items in a home that often prove hazardous to toddlers, there was testimony that these toddlers were known to leave their apartment to look for their mother when she used the telephone downstairs. In addition, there was testimony presented that the individuals in the hallway who informed Moorehead that the defendant had left as soon as she had left were drug dealers.

[3] In *State* v. *Golding*, supra, 213 Conn. 239–40, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

mined by its application to the particular facts at issue. *Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); *State* v. *Pickering*, 180 Conn. 54, 57, 428 A.2d 322 (1980). In challenging the constitutionality of a statute, the defendant bears the heavy burden of establishing beyond a reasonable doubt that the statute is in fact unconstitutional. *State* v. *Hernandez*, 204 Conn. 377, 385, 528 A.2d 794 (1987). On appeal, a court will indulge in every presumption in favor of a statute's constitutionality. *State* v. *Jason B.*, 248 Conn. 543, 556, 729 A.2d 760 (1999). If a penal statute provides fair warning, it will survive a vagueness attack. *State* v. *Pickering*, supra, 61.

"If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness . . . ." (Internal quotation marks omitted.) Id., 62. This court must "also look to see whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." *State* v. *Erzen*, 29 Conn. App. 591, 594, 617 A.2d 177 (1992).

In *State* v. *Schriver*, 207 Conn. 456, 457, 542 A.2d 686 (1988), a defendant was convicted of violating § 53-21 for following the thirteen year old victim, grabbing her around her waist and stating, " 'Don't worry, all I want to do is feel you.' " In *Schriver*, our Supreme Court determined that § 53-21 was facially vague because it "fail[ed] to articulate a definite standard for determining whether the conduct of the defendant in this case is permitted or prohibited." Id., 461. The court stated further that " '[a]ny act' may violate the statute so long as it is 'likely to impair' a minor's health or morals. Standing alone, the phrase 'any act' provides no guidance to potential violators, police officers or juries, particularly

because specific intent is not an element of the offense as charged in this case. . . . Nor is the focus of the statute measurably narrowed by the phrase 'likely to impair.' In its ordinary meaning, this phrase would seem to authorize police officers and jurors to determine culpability subjectively, on an ad hoc basis. Rather than providing objective certainty, this phrase compounds the vagueness of the statute because it invites jurors to base criminal liability on their own moral predilections and personal predictions of likely harm. . . . [Section] 53-21 fails to manifest minimal guidelines by which innocent acts can be objectively and foreseeably distinguished from conduct that violates the statute. The 'absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause. . . . Clearly, the constitutionality of § 53-21 depends upon a determination of the extent to which prior decisions of this court have supplied sufficient guidelines to save the statute from its facial invalidity." (Citations omitted.) Id., 461–62.

While the *Schriver* court ultimately determined that § 53-21 was unconstitutionally vague as applied to the facts of that case, finding that the defendant "had no reasonable opportunity to know that his conduct was prohibited"; id., 466; the defendant in the present case will not enjoy the same result. Prior decisions of this court and our Supreme Court have supplied sufficient guidelines that afforded the defendant reasonable notice that his conduct was prohibited and, therefore, preclude § 53-21 from being found facially invalid.

The statute sets forth two different types of behavior that are likely to injure a child physically or to impair the child's morals: (1) deliberate indifference to, acquiescence in or the creation of a situation inimical to the child's moral or physical welfare, and (2) acts directly perpetrated on the person of the child and injurious to

his or her moral or physical well-being. *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963). The defendant here was charged under the first category, namely, creating a situation that endangered the lives or limbs of the children or risked injury to their health. Prior cases have held that a defendant who knowingly fails to provide for the protection of a child when that child is under the care of the defendant creates a situation that endangers the physical well-being of the child and, thus, falls within the ambit of the statute. See, e.g., *State* v. *George*, 37 Conn. App. 388, 390–92, 656 A.2d 232 (1995) (leaving seventeen month old child unattended in apartment created situation risking injury to child's health and life or limb); see also, e.g., *State* v. *Tyler-Barcomb*, 197 Conn. 666, 668–69, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986) (not unreasonable for jury to conclude that defendant violated § 53-21 by failing to prevent further sexual abuse to her daughter despite being aware that abuse was occurring and by having sexual intercourse with abuser in daughter's presence).

Furthermore, while this court recognizes that the children in this case did not sustain any actual injury as a result of the defendant's absence, the statute covers the situation where there need only be a *risk* of injury for the defendant to be convicted. See *State* v. *Williams*, 18 Conn. App. 477, 479, 558 A.2d 1026, cert. denied, 212 Conn. 809, 564 A.2d 1073 (1989); *State* v. *Apostle*, 8 Conn. App. 216, 243, 512 A.2d 947 (1986).

Those cases and numerous others provided sufficient guidelines that gave the defendant fair warning that leaving his three young children unattended created a situation that endangered their lives and limbs. Therefore, we conclude that § 53-21, as applied to the defendant's conduct in the present case, is constitutional because it provided sufficient notice to him that his

conduct was prohibited. See *State* v. *Pickering*, supra, 180 Conn. 62.

The judgment is affirmed.

In this opinion the other judges concurred.