# STATE OF CONNECTICUT *v.* VINCENT GRIFFIN, JR.
## (AC 25687)

DiPentima, Harper and Hennessy, Js.

Argued February 14—officially released August 22, 2006

*Annacarina Del Mastro*, senior assistant public defender, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Maureen M. Keegan*, executive assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Vincent Griffin, Jr., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). On appeal, the defendant claims that (1) he was denied his right to due process as a result of prosecutorial misconduct and (2) the court's improper jury instructions deprived him of (a) his due process right to a unanimous verdict and (b) a fair trial due to the dilution or shifting of the state's burden to prove compulsion. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On Saturday, October 5, 2002, the defendant and L[1] attended their twenty year high school reunion. Having left her truck at the house of a friend's mother, L rode with two friends to the hotel where the reunion was held. L conversed with many people at the reunion, including the defendant, whom she had known during high school through a mutual friend. They talked for a

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

time at the event, showed pictures of their respective children,[2] consumed alcohol and, along with the two friends with whom L had arrived that evening, smoked a marijuana cigarette in the parking garage.

At about midnight, when the reunion was ending, the friends with whom L had arrived decided they wanted to go home rather than to a bar where others were going. L rode in the defendant's vehicle to the nearby bar where they talked and had a few drinks until it closed. The defendant drove L back to her truck. After he told L that he would never forgive himself if anything happened to her on her way home, the defendant followed her to her house. L drove her vehicle into her driveway, opened the garage door remotely and drove into the garage. Upon exiting her truck, L noticed the defendant's vehicle in the driveway; she did not close the garage door behind her when she entered the house. Unbeknownst to L, the defendant also entered L's house, and she discovered him in the family room.

L went into the kitchen and offered the defendant a glass of water. The defendant grabbed her with both hands and started kissing her. She was able to push him away and walked quickly into the living room toward the front door, but he followed her and began to kiss her again. He pulled her onto the living room couch and continued to kiss her. The defendant lifted L's skirt and removed her undergarments, and L could feel him begin to perform cunnilingus on her. She was able to push him off and fell to the floor, where she pulled her undergarments back on. L started to walk toward the front door again, and the defendant grabbed her and pulled her into the bedroom, where he threw her on the bed, kissed her and again removed her undergarments. L was able to wrest herself away and pull

---

[2] The defendant had been married for more than two years and L was divorced.

up her undergarments, and she ran down the hallway to open the front door. The defendant pulled L back onto the couch, and he removed her undergarments yet again. She continued to plead with him to stop and told him to go home to his wife, to which he answered, "I don't give an F'n crap about my wife." The defendant exposed his penis and attempted to insert it into her vagina, but, because her vagina was too dry, he spit on his hand, rubbed the spit on his penis and successfully inserted it. The defendant laid back on the couch after ejaculating inside her, and L collected her undergarments and ran into the bathroom. She could feel his semen coming out of her and cleaned herself. When she emerged, the defendant was dressed and standing by the front door. When asked if he could call her, she told him he never could. After he left, she locked the door.

On Monday, October 7, 2002, L went to a hospital to have a rape test performed. Although she told some friends of the incident during the week, it was not until the following Monday that L decided she was ready to make a formal complaint to the police. At the end of December, 2002, a detective from the police department called the defendant to inform him that there was a complaint against him; they arranged to meet on January 2, 2003. After waiving his rights pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the defendant informed the detective that he and L had kissed consensually and that he had not forced himself on her. After reading and signing the report, the defendant left.

Thereafter, the state charged the defendant with a single count of sexual assault in the first degree in violation of § 53a-70 (a) (1). A jury trial commenced in January, 2004, and evidence was presented over a period of eight days. At trial, the defendant admitted

that there was consensual sexual contact but maintained that there was no sexual intercourse. On February 4, 2004, the jury found the defendant guilty. The defendant was sentenced to a total effective term of twenty years incarceration, execution suspended after fourteen years, followed by twenty years probation. On February 9, 2004, the defendant filed a motion for a judgment of acquittal, which the court denied in a memorandum of decision on May 14, 2004. This appeal followed.

## I

The defendant claims that the prosecutor's misconduct during closing arguments deprived him of his due process right to a fair trial. In the alternative, he argues that this court should exercise its supervisory powers to reverse his conviction because the state "engaged in a pattern of intentional and flagrant misconduct." We disagree with the first claim and decline the invitation to consider the alternative claim.

The record reveals that neither during the state's initial closing argument nor during the rebuttal did the defendant object to the statements made by the prosecutor. There also is no indication that the defendant objected at any time after the closing arguments. This failure to object does not preclude our review.

"Typically, if a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). . . . In cases of unpreserved claims of prosecutorial misconduct, however, it is unnecessary for the defendant to seek to prevail under the specific requirements of . . . *Golding* . . . and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test. The reason for this is that the touchstone for appellate

review of claims of prosecutorial misconduct is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out by this court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)." (Citation omitted; internal quotation marks omitted.) *State* v. *Spencer*, 275 Conn. 171, 177–78, 881 A.2d 209 (2005).

Accordingly, we undertake our review of these claims with a two step analysis. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 626 (2004).

We are further guided by standards of review as to claims of prosecutorial misconduct during closing argument. "[P]rosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments. . . . In determining whether such misconduct has occurred, the reviewing court must give due deference to the fact that [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . .

"Or to put it another way while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. . . . A prosecutor must draw a careful line. On the one hand, he should be fair; he should not seek to arouse passion or engender prejudice. On the other hand, earnestness or even a stirring eloquence cannot convict him of hitting foul blows." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 744–46, 888 A.2d 985 (2006).

Turning to the first step of our analysis with these principles in mind, we consider the specific allegations of misconduct. The defendant groups these claims into three areas of misconduct by the prosecutor during closing argument: (1) she expressed her personal opinions about the credibility of L and about the defendant's credibility and guilt, and appealed to the emotions of the jury; (2) she argued that justice and the juror's oath required a conviction; and (3) she alluded to facts that were not in evidence.

A

The defendant has cited to a number of instances in support of his first area of alleged prosecutorial misconduct. He notes that the prosecutor repeatedly referred to L as a "nice girl" and "nice lady," and to the defendant as a "con man." He notes the prosecutor's description of L's ordeal in reporting the incident, undergoing the rape test and testifying at trial. He then refers to the prosecutor's account of the defendant's actions prior to, during and after the incident, in which the prosecutor characterized those actions as manipulative. We have considered these claims in the context of the entire argument and, guided by the most recent precedent of

our Supreme Court, are not persuaded that they rise to the level of prosecutorial misconduct.

Although the defendant relies on *State* v. *Warholic*, 84 Conn. App. 767, 854 A.2d 1145 (2004), in which this court found misconduct, the Supreme Court subsequently reversed the decision in *State* v. *Warholic*, 278 Conn. 354, 897 A.2d 569 (2006).[3] The Supreme Court rejected that defendant's claim and this court's determination that the prosecutor improperly expressed his opinions as to the credibility of certain witnesses and the ultimate issue of the defendant's guilt. In so doing, the court found that the prosecutor properly commented on the evidence presented by both the state and the defendant, citing evidence that supported the credibility of certain witnesses and the lack of credibility of others, and arguing that these witnesses had no motive to lie. *State* v. *Warholic*, supra, 365–68, 370–73; see also *State* v. *Bermudez*, 274 Conn. 581, 591–95, 876 A.2d 1162 (2005), after remand, 95 Conn. App. 577, 897 A.2d 661 (2006). Likewise, in this case, the prosecutor properly commented on the evidence and argued from the evidence that L had no motive to lie and that the defendant did have a motive to lie. See *State* v. *Warholic*, supra, 373–74 (prosecutor's remarks proper because motives of defendant and victim in testifying were ascertainable on basis of inferences drawn from evidence and jury's common sense).

The defendant also argues that the prosecutor improperly appealed to the jury's emotions by emphasizing L's trauma and by characterizing the defendant's conduct as manipulative. See *State* v. *Thompson*, 266 Conn. 440, 473, 832 A.2d 626 (2003) ("prosecutor . . . may not appeal to the emotions, passions and prejudices of the jurors . . . or otherwise inject extraneous

---

[3] The Supreme Court issued the opinion in *Warholic* after oral argument in this case.

issues into the case that divert the jury from its duty to decide the case on the evidence" [internal quotation marks omitted]). Referring several times to L as a "nice girl" and "nice lady," and referring once to the defendant as a "con man" did not rise to the level of prosecutorial misconduct. As to the references to L, there was testimony from the defendant as well as argument from his counsel characterizing her as a "nice" person. As to the one time reference to the defendant as a "con man," this, too, was based on evidence the state elicited to support its theory that the defendant had manipulated L to engage in his sexual assault of her. This is distinguishable from the misconduct found in *Warholic* in which the prosecutor referred to the victim as a " 'cute little kid' " solely for the purpose of arousing the sympathy of the jury. *State* v. *Warholic*, supra, 278 Conn. 376–77. Because the remarks here were based on the evidence and did not divert the jury from the facts of the case, we reject the defendant's claims that these remarks improperly appealed to the jury's emotions.

## B

The defendant next argues that the prosecutor committed misconduct by arguing that justice and the juror's oath required a conviction.

In her final remarks, the prosecutor said: "And saying no is enough. He wouldn't listen. She does the best she could. Ladies and gentlemen, make [the defendant] listen. By your verdict of guilty, by seeking justice in this case as [L] has done, make [the defendant] listen that what he did was wrong. It was against her will. It was not consensual. It was rape. You all told me on voir dire that if the law and the evidence required it, you will have no problem finding the defendant guilty. That time has come. The evidence in this case, the law in this case requires—justice, requires that you find the

defendant guilty. Make him listen, ladies and gentlemen."

Citing *State* v. *Whipper*, 258 Conn. 229, 780 A.2d 53 (2001), overruled in part by *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004), and *State* v. *Ceballos*, 266 Conn. 364, 832 A.2d 14 (2003), the defendant argues that these remarks improperly suggested that the jury had a duty to find him guilty. In both of those cases, the court found that the prosecutor's remarks improperly asked the jury to consider matters that were not in evidence in deliberating the defendant's guilt. See, e.g., *State* v. *Whipper*, supra, 271 (improper to suggest jury had duty as members of community to find defendant guilty). It also would be improper to urge the jury to "send a message" to the community by its verdict. *State* v. *Reynolds*, 264 Conn. 1, 185–86, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

This case, however, is more analogous to *State* v. *Thompson*, supra, 266 Conn. 474–75, in which the court found no misconduct when the prosecutor reminded the jurors of their oath to return a verdict in accordance with the evidence and that the evidence supported the verdict of guilty. Here, the prosecutor argued as her *Thompson* counterpart had argued, and did not suggest that the jury decide the issue on a basis other than the evidence and the applicable law. In urging the jury to "make [the defendant] listen," she also did not improperly suggest that the jury send a message to the community. Under our recent Supreme Court precedent, this claim of misconduct fails.

C

Finally, the defendant claims that the prosecutor improperly alluded to facts that were not in evidence in two instances. The defendant first cites the prosecutor's argument that the presence of his semen in L's vagina

was due to his having penetrated L and argues that no expert witness testified to this and that these improper remarks amounted to unsworn testimony. He also takes issue with the prosecutor's use of a photograph, which was taken at the reunion, of L in a group and showing the defendant as an onlooker, and argues that the prosecutor's remark that "a picture speaks a thousand words" elicited jury speculation on the defendant's intent.

"It is well established that a prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument. . . . [T]he state may [however] properly respond to inferences raised by the defendant's closing argument. . . .

"A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence. . . . Moreover, when a prosecutor suggests a fact not in evidence, there is a risk that the jury may conclude that he or she has independent knowledge of facts that could not be presented to the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Ceballos*, supra, 266 Conn. 400.

As to the first claim, the following additional facts are relevant. The defendant testified at trial that he and L had consensual sexual contact but that he did not penetrate her vagina with his penis. He further testified that he ejaculated on her body. L testified that, after the defendant sexually assaulted her and penetrated her vagina with his penis, she went to the bathroom and cleaned herself. The state presented evidence of

lab results that revealed the defendant's semen was inside L's vagina two days after the incident.

The prosecutor argued that the defendant's claim of no vaginal penetration was belied by other evidence. She referred to testimony from the emergency room nurse at the hospital where L underwent the rape test, who stated that the vagina is a closed orifice that needs to be physically opened. The prosecutor went on to refer to the testimony of the defendant's expert witness, a physician, who had testified that the defendant's semen could have been washed into the vagina by L herself. The prosecutor properly confined herself to the evidence, invited reasonable inferences from that evidence and appealed to the jury's common sense and life experience.

As to the use of the photograph during the state's closing argument, we first note that this photograph was admitted into evidence. The prosecutor properly alluded to it in the context of other testimony about the defendant's presence around L and her friends throughout the evening.[4] Her remarks did not suggest that the state had knowledge of facts not before the jury, and to the extent that she employed rhetorical flourish in alluding to this photograph, it was simply fair argument. See *State* v. *Warholic*, supra, 278 Conn. 366. Accordingly, the defendant's claim fails.

II

The defendant's next two claims center on allegations of improper jury instructions. At the outset, therefore,

---

[4] The pertinent part of the prosecutor's closing argument states: "And the defendant was always around. [L] told you who she sat with at the reunion. She gave you the names of her friends. She told you what she ate. The defendant couldn't tell you who he was with. But he was always around. And, in fact, we have the photograph, state's exhibit six, which shows the defendant around, looking on. And I submit to you, if a picture speaks a thousand words, this picture speaks to you [of] the defendant's intents that were manifested later that night."

we note our well established standard of review. "When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Bermudez*, supra, 274 Conn. 603–604.

## A

The defendant first claims that the court's improper jury instructions denied him his right to a unanimous verdict. Specifically, he claims that the court sanctioned a nonunanimous verdict with its use of the disjunctive word "or" in its definition of sexual intercourse, thus depriving the defendant of his due process right to a unanimous verdict, pursuant to the sixth and fourteenth amendments to the United States constitution. We disagree.

The defendant concedes that his claim was not preserved properly at trial[5] and, accordingly, now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.[6]

---

[5] The defendant alternatively contends that, because he raised this claim during oral argument on his postverdict motion for acquittal, the claim was preserved properly pursuant to Practice Book § 60-5. In dismissing this argument, we note that our Supreme Court has held to the contrary: "A party cannot preserve grounds for reversing a trial court decision by raising them for the first time in a postverdict motion." *State* v. *Smith*, 275 Conn. 205, 224 n.10, 881 A.2d 160 (2005).

[6] "Under *Golding*, a defendant may prevail on unpreserved claims only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional

Because the record is adequate for review, and "[a] claim bearing on the defendant's right to a unanimous verdict implicates a fundamental constitutional right to a fair trial"; (internal quotation marks omitted) *State* v. *Bailey*, 82 Conn. App. 1, 5, 842 A.2d 590, cert. denied, 269 Conn. 913, 852 A.2d 744 (2004); we review the defendant's claim.

The court's applicable jury instructions essentially mirrored General Statutes §§ 53a-70 (a) (1) and 53a-65 (2). The court stated: "The defendant is charged with the crime of sexual assault in the first degree in violation of § 53a-70 (a) (1) of our criminal code, which provides in pertinent part as follows: A person is guilty of . . . sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or by the threat of the use of force against such other person, which reasonably causes such person to fear physical injury to such person.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: (1) that the defendant . . . compelled another person, [L], to engage in sexual intercourse and (2) that the sexual intercourse was accomplished by the use of force against [L], or by the threat of use of force against [L] to fear physical injury.

"I'm going to define these terms for you, and you are instructed to use the court's definitions in your deliberations and decision. Sexual intercourse. Sexual

violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 359-60, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

intercourse is defined by statute. It means for purpose of this case, vaginal intercourse *or* cunnilingus. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse. Sexual intercourse does not require the emission of semen. Penetration, however, is not required for the commission of cunnilingus." (Emphasis added.)

"When a nonpetty offense is tried to a six person jury . . . the sixth and fourteenth amendments to the United States constitution entitle the defendant to a unanimous verdict." *State* v. *Niemeyer,* 258 Conn. 510, 523 n.14, 782 A.2d 658 (2001); see also Practice Book § 42-29 ("[t]he verdict shall be unanimous and shall be announced by the jury in open court"). Nevertheless, "[t]o invalidate a jury instruction that mirrors the disjunctive language of the statute defies both logic and experience." *State* v. *Tucker,* 226 Conn. 618, 646, 629 A.2d 1067 (1993). We view the defendant's claim in light of the well established standard as set out by our Supreme Court in *State* v. *Famiglietti,* 219 Conn. 605, 595 A.2d 306 (1991). Our Supreme Court has "not required a specific unanimity charge to be given in every case in which criminal liability may be premised on the violation of one of several alternative subsections of a statute. We have instead invoked a multipartite test to review a trial court's omission of such an instruction. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant

has been charged." Id., 619–20; see also *State* v. *Sorabella*, 277 Conn. 155, 206–207, 891 A.2d 897 (2006); *State* v. *Ceballos*, supra, 266 Conn. 419.

As a preliminary matter, then, we look to whether the court sanctioned a nonunanimous verdict. A careful review of the record demonstrates that, on at least seven occasions, the court instructed the jury that its verdict on whether the defendant was guilty of the crime charged must be unanimous. The crux of the defendant's claim is that the court's unanimity instructions were inadequate, as evidenced by the inclusion of the disjunctive word "or" when defining sexual intercourse. The defendant's claim is akin to that in *State* v. *Dyson*, 238 Conn. 784, 680 A.2d 1306 (1996), in which the defendant argued that "although the trial court gave several general unanimity instructions, the court did not expressly inform the jury that it must unanimously agree on one of the particular alternatives set forth in [the applicable statute] . . . . The defendant maintains, therefore, that, based on the trial court's use of the disjunctive in its instructions explaining [the applicable statute] to the jury, the jurors could have disagreed on the particular statutory alternative applicable to the defendant's conduct, yet collectively could have agreed that he [was guilty of the crime charged]." Id., 792–93. We agree, however, with our Supreme Court in *Dyson* that "the absence of language *expressly* sanctioning a nonunanimous verdict means that the defendant has not met the first part of the *Famiglietti* test." (Emphasis added; internal quotation marks omitted.) Id., 793.[7] The

---

[7] Even if the defendant were to surmount the first part of the *Famiglietti* test, however, case law provides that the alternative means of performing sexual intercourse are not conceptually distinct. See *State* v. *Anderson*, 211 Conn. 18, 35, 557 A.2d 917 (1989) ("[t]he several ways in which sexual intercourse may be committed under General Statutes § 53a-65 [2] are only one conceptual offense"). Therefore, the court's instruction that sexual intercourse included vaginal intercourse *or* cunnilingus did not constitute a nonunanimous instruction of two conceptually distinct alternatives.

record is devoid of any indication that the court expressly sanctioned a nonunanimous verdict, and we cannot interpret the court's silence as having done so. The alleged constitutional violation does not clearly exist, nor did it deprive the defendant of a fair trial, and, accordingly, the defendant's first claim fails under the third prong of *Golding*.

B

The defendant next claims that he was denied his due process right to a fair trial because the court improperly instructed the jury on consent, thus diluting or shifting the state's burden of proof on the element of compulsion. More specifically, he claims that the court's instructions were inadequate (1) as a matter of law and (2) because they did not include a proper instruction on consent, as set forth in *State* v. *Smith*, 210 Conn. 132, 554 A.2d 713 (1989). We disagree.

At the outset, we note that the defendant's claim is reviewable because he had requested a jury instruction on the issue of consent.[8] See *State* v. *Ramos*, 261 Conn. 156, 170, 801 A.2d 788 (2002) ("[i]t is well settled . . . that a party may preserve for appeal a claim that an instruction, which was proper to give, was nonetheless defective either by: [1] *submitting a written request to charge covering the matter*; or [2] taking an exception to the charge as given" [emphasis added]); Practice Book § 42-16 ("[a]n appellate court shall not be bound

[8] The defendant's requested consent instruction provided: "The actual consent of the victim to sexual intercourse will negate the element of compulsion by threat of force. The consent required, however, must be actual and real, and not just mere surface acquiescence induced by fear or shock. In order for consent to sexual intercourse to negate the element of compulsion, the intercourse must be engaged in by the other person with no compulsion, no threat, no fear. In other words, it must be a truly voluntary and willing act of sexual intercourse. Consent may be express or it may be implied from all the circumstances then and there existing. Whether or not [L] consented to the sexual intercourse is a question of fact which you must determine from all the circumstances which have been proven to you."

to consider error as to the giving of, or the failure to give, an instruction *unless the matter is covered by a written request to charge* or exception has been taken by the party appealing immediately after the charge is delivered" [emphasis added]).

The defendant's version of events at trial was significantly different from that of L. For example, he testified that L invited him into her house for a drink, and, while they were in the kitchen, she leaned into him and they embraced and kissed. While on the couch, he alleged that she was on top of him and was rubbing her body against his. He further claimed that they attempted to engage in sexual intercourse, but because his penis was too soft, she stimulated him manually until he ejaculated. In summary, the defendant argued that he reasonably interpreted L's actions to evince her consent to the sexual contact.[9]

Consent is not an element of § 53a-70 (a) (1), and a consent instruction is not always required. "The fact that any act engaged in under compulsion would necessarily be nonconsensual . . . does not impose upon the court a duty to instruct the jury on consent as if it were still a statutory element. The statutory definition of the crime, which in plain language requires that it be the use of force or the threat of the use of force which serves to compel another person to engage in sexual intercourse, is sufficient, in and of itself, to consider whether the victim, in fact, consented to the act." (Citation omitted; internal quotation marks omitted.) *State* v. *Mackor*, 11 Conn. App. 316, 324, 527 A.2d 710 (1987).

The court instructed the jury on consent as follows: "Consent. If you find that the victim consented to the

---

[9] We note that the defendant did not argue that L's behavior led him to believe that she had consented to their engagement in sexual intercourse. Rather, he maintained that, although they *attempted* to engage in consensual sexual intercourse, they were unable.

act of sexual intercourse, you cannot find that the act was compelled by the use of force or the threat of use of force. Such consent must have been actual and not simply acquiescence brought about by force or by fear or by shock. In order for consent to sexual intercourse to negate the element of compulsion, the intercourse must be engaged in by the other person with no compulsion, no threat, no fear and no force. The act must have been truly voluntary on the part of the complainant. You may find that the consent was expressed or you may find that it's implied from the circumstances that you find existed. Whether there was consent is a question of fact for you to determine." The defendant did not take an exception to the charge given, either during the charging conference or at the time of the instruction.

The defendant argues that the court's consent instruction, particularly the statement that "[t]he act must have been truly voluntary on the part of the complainant," was incorrect as a matter of law because "it instructed the jury that in determining whether the state had met its burden of proof on compulsion, [the jurors] needed to consider the subjective state of mind of the victim." The court's consent instruction, however, was taken almost verbatim from the manual on selected criminal jury instructions for the state; see J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 7.1, p. 326; and has been upheld by this court in response to similar claims. See, e.g., *State* v. *Brown*, 59 Conn. App. 243, 251–52, 756 A.2d 860 (2000), appeal dismissed, 256 Conn. 740, 775 A.2d 980 (2001); *State* v. *White*, 55 Conn. App. 412, 419–20, 740 A.2d 399, cert. denied, 252 Conn. 908, 743 A.2d 621 (1999). Because the court instructed the jury appropriately as to consent, the instruction was not inadequate as a matter of law.

The defendant further claims that, under *State* v. *Smith*, supra, 210 Conn. 132, the jury should have been

instructed that the state had to disprove the defendant's claim of consent beyond a reasonable doubt. "It is likely that juries in considering the defense of consent in sexual assault cases, though visualizing the issue in terms of actual consent by the complainant, have reached their verdicts on the basis of inferences that a reasonable person would draw from the conduct of the complainant and the defendant under the surrounding circumstances. It is doubtful that jurors would ever convict a defendant who had in their view acted in reasonable reliance upon words or conduct of the complainant indicating consent, even though there had been some concealed reluctance on her part. *If a defendant were concerned about such a possibility, however, he would be entitled, once the issue is raised, to request a jury instruction that the state must prove beyond a reasonable doubt that the conduct of the complainant would not have justified a reasonable belief that she had consented.*" (Emphasis added.) Id., 141. We note that the defendant did not request such an instruction;[10] in fact, his requested jury instructions contained language comparable to that used by the court. Accordingly, the court's consent instruction was not improper, and the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Had the defendant made such a request, however, it is questionable whether a consent instruction would be mandatory. "[A] fair reading of [*Smith* and *State* v. *Jeffrey*, 220 Conn. 698, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992)] indicates that they stand for the proposition that if a defendant requests a charge on reasonable belief and has fairly put the issue of consent before the jury, then it would be appropriate for the court to give such a charge. Neither case, however, indicates that such a charge would be mandatory if properly requested and if the issue is fairly before the jury." *State* v. *Cotton*, 77 Conn. App. 749, 758, 825 A.2d 189, cert. denied, 265 Conn. 911, 831 A.2d 251 (2003).