******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HERMAN APODACA *v.* COMMISSIONER
OF CORRECTION
(AC 37679)

Lavine, Beach and Alvord, Js.

*Submitted on briefs May 26—officially released August 9, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Walter C. Bansley IV* and *Wade Luckett*, assigned
counsel, filed a brief for the appellant (petitioner).

*Matthew C. Gedansky*, state's attorney, *Denise B.
Smoker*, senior assistant state's attorney, and *David M.
Carlucci*, assistant state's attorney, filed a brief for the
appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Herman Apodaca, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims that the habeas court erred in concluding that he failed to prove ineffective assistance of his trial counsel because of counsel's failure to call a potential defense witness. We affirm the judgment of the habeas court.

The following facts regarding the underlying criminal conviction were set forth by our Supreme Court on direct appeal and restated by the habeas court. "In August, 2005, the [petitioner], a New York resident, met John Ortiz, a New Britain barber. The [petitioner] asked Ortiz to let him know whether he knew anyone in Connecticut who might be interested in buying large quantities of drugs. Some time after that meeting, Ortiz contacted the [petitioner] and relayed information that a friend, Luis Bruno, was interested in making such a purchase.

"On September 22, 2005, the [petitioner] and two of his acquaintances, Eduardo Davila and Rodney Hankerson, went to New Britain, where Ortiz introduced them to Bruno. An agreement was reached to sell Bruno four kilograms of cocaine at a price of $19,000 per kilogram, with the sale to take place two days later. The [petitioner], Davila and Hankerson decided to use the sale as a pretext to steal Bruno's money.

"On September 24, 2005, Bruno called Davila on the [petitioner's] cell phone to express reservations about the sale, and they ultimately agreed that Bruno could purchase two, rather than four, kilograms of cocaine. Later that same day, the [petitioner], Hankerson and Davila drove to New Britain, where they met Ortiz in a store parking lot. Davila and Hankerson carried guns on them as directed by the [petitioner]; the [petitioner] gave Davila a larger gun so 'it would look more intimidating' and directed Davila to give his own smaller gun to Hankerson. Hankerson brought with him a duffle bag containing rolls of duct tape and bricks of fake cocaine made out of sheetrock. The [petitioner], driving one vehicle, with Hankerson as his passenger, and Davila, driving a second vehicle, followed Ortiz' car to Bruno's apartment in New Britain. Davila went to Bruno's apartment and entered through the rear door. Davila saw stacks of money piled on the kitchen table and drew his gun on Bruno. Davila then relayed a message to the [petitioner's] cell phone indicating that everything was under control. The [petitioner] entered the apartment, along with Hankerson who was carrying the bag containing the duct tape and fake cocaine. A fight ensued between Hankerson, Davila and Bruno. The [petitioner] filled a grocery bag with the cash that was piled on the kitchen table and returned with it to his car, leaving Hankerson and Davila to deal with Bruno.

During the struggle with Bruno, in which Hankerson and Davila tried to bind his mouth, arms and legs with the duct tape, Bruno was beaten and fatally stabbed.

"Hankerson and Davila fled the apartment and drove to a rest stop, where they met the [petitioner]. The two men had blood on their clothes, and the [petitioner] directed them to get back into their vehicle and to follow him. The [petitioner] led them back to his girlfriend's apartment in New York, where he gave them a change of clothes. The three men split the money taken from Bruno's apartment.

"Thereafter, the [petitioner] was arrested and charged with felony murder, two counts of robbery in the first degree and one count of conspiracy to commit robbery in the first degree. At trial, the [petitioner] did not dispute that he had been involved in a scheme to sell Bruno drugs, but disclaimed any knowledge of the robbery or murder. . . . The jury returned a verdict of guilty on all four counts." *State* v. *Apodaca*, 303 Conn. 378, 381–83, 33 A.3d 224 (2012). The petitioner appealed directly to our Supreme Court, pursuant to General Statutes § 51-199 (b) (3), and his convictions were affirmed. Id., 379, 402.

The petitioner filed the operative petition for a writ of habeas corpus in December, 2014. The petitioner alleged, inter alia, that his trial counsel, Devereaux Cannick, rendered ineffective assistance for failing to call Hankerson as a witness at the petitioner's criminal trial.[1] Following a trial, the court concluded that the petitioner had failed to prove both deficient performance and prejudice. The court granted certification to appeal from the denial of the habeas petition. This appeal followed.

We begin with the applicable standard of review and relevant principles of law. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance

prong or the prejudice prong . . . .” (Internal quotation marks omitted.) *Browne* v. *Commissioner of Correction*, 158 Conn. App. 1, 7–8, 125 A.3d 1014, cert. denied, 318 Conn. 906, 122 A.3d 634 (2015).

“The first component, generally referred to as the performance prong, requires that the petitioner show that counsel’s representation fell below an objective standard of reasonableness . . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment.” (Citation omitted; internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 317–18, 759 A.2d 118 (2000). “[T]he presentation of testimonial evidence is a matter of trial strategy. . . . The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense.” (Citation omitted; internal quotation marks omitted.) *Chace* v. *Bronson*, 19 Conn. App. 674, 680–81, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989).

“[T]he second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” (Internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, supra, 60 Conn. App. 318.

Regarding the performance prong, the petitioner argues that Cannick’s decision not to call Hankerson as a witness was unreasonable and contends that Hankerson’s testimony would have helped to establish a different and more effective defense. The petitioner further notes that Cannick’s strategy to admit to the petitioner’s involvement with the drug deal but to deny that the petitioner had the intent to commit robbery was “not a defense so much as an almost complete concession of the state’s entire case.” We disagree.

The following additional facts are relevant. At the habeas trial, Cannick—an attorney with twenty years of experience in the practice of criminal law—testified that after he had examined the state’s evidence, he concluded that the petitioner’s best defense was to argue “[this] was a drug deal that went wrong.” Cannick testified that the petitioner originally had intended to testify that he traveled to Connecticut for a deal in

the music industry. The habeas court "agree[d] with Cannick that based on the entire trial record such testimony would have been implausible and would have significantly damaged any hopes for acquittal." Hankerson testified that if he had testified at the petitioner's criminal trial, he would have denied any knowledge of a drug deal or a robbery and stated his belief that he, the petitioner, and Davila had traveled to Connecticut for a music deal. The court concluded that the petitioner did not satisfy *Strickland*'s performance prong because he "failed to establish how the testimony of . . . Hankerson would have been helpful to him at trial . . . ."

The court's conclusion that Hankerson's testimony would not have been helpful to the petitioner's defense was reasonable. First, Hankerson's testimony would have directly contradicted the strategy that Cannick employed at trial, and Cannick's strategy was reasonable. In light of the state's significant evidence regarding a drug deal, Cannick had sound strategic reasons for choosing the "drug deal that went wrong" defense. Such defense could not place the petitioner in further jeopardy, in light of the fact that no drugs actually were involved in the transaction and the petitioner was not charged with any drug related offense.[2] In the context of this strategy, Hankerson's testimony would not have been helpful in establishing the petitioner's defense. We agree that Cannick's decision not to call Hankerson clearly fell "into the category of trial strategy or judgment calls that we consistently have declined to second guess." (Internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 132, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011).

Even if Cannick had pursued a different defense strategy, Hankerson's testimony would not have been helpful. As mentioned, Hankerson claimed not to have had knowledge that he was traveling to Connecticut for a drug deal, despite the state's evidence that a drug transaction had been planned for that day. He also claimed not to have had knowledge that the petitioner was a drug dealer, despite their close friendship. The habeas court credited Cannick's determination that it would not have been plausible to deny that a drug deal had been arranged. We conclude that the habeas court properly determined that the petitioner had failed to satisfy the performance prong.

The habeas court also determined that the petitioner failed to satisfy the prejudice prong. The record also supports this conclusion. At the petitioner's criminal trial, Davila was the sole witness to testify that the petitioner had proposed and led a plan to rob Bruno. Cannick vigorously cross-examined Davila and showed that Davila had made several prior inconsistent statements and that Davila was testifying in the hope of receiving a much lighter sentence at his own criminal

trial. Nonetheless, the jury apparently credited Davila's testimony. In light of the likely implausibility of Hankerson's testimony and the jury's apparent reliance on Davila's testimony, "[t]here is no reasonable probability that the outcome of the proceeding would have been different" if Hankerson had testified at the petitioner's trial. *Martin* v. *Commissioner of Correction*, 155 Conn. App. 223, 232, 108 A.3d 1174, cert. denied, 316 Conn. 910, 111 A.3d 885 (2015).

Based on the foregoing, we conclude that the habeas court properly determined that the petitioner has not met his burden of proving that Cannick rendered ineffective assistance of counsel for failing to call Hankerson as a witness and that there was no prejudice resulting from that decision.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner raised numerous claims of ineffective assistance of counsel in his habeas petition, and the court denied the habeas petition in its entirety. The only claim of ineffective assistance of counsel at issue in this appeal is the failure to call Hankerson as a witness.

[2] The petitioner's argument regarding Cannick's failure to call Hankerson as a witness appears to be rooted in the idea that Cannick's entire trial strategy was flawed. Cannick testified that admitting the petitioner's presence in Connecticut for a drug deal but denying intent to commit robbery was one of the few viable defenses. The court credited his testimony and agreed with Cannick that testimony regarding a music deal would have been damaging to the petitioner's case.