******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The petitioner, who had been convicted of various offenses with his accomplice, M, arising out of the sexual assault of the victim at gunpoint, sought a writ of habeas corpus alleging that defense counsel at his criminal trial had rendered ineffective assistance. The jury in the underlying criminal trial had acquitted the petitioner of count seven of the information, which charged him with sexual assault as a principal, but found him guilty under count eight of the information, which charged him with sexual assault as an accessory. In the instructions to the jury, the trial court erroneously stated that the petitioner could be convicted as a principal or accessory with respect to count eight. In the petitioner's direct appeal from his conviction, our Supreme Court determined that defense counsel had waived any claim that the jury had not been charged correctly as to count eight because he had acquiesced to the charge as given. The petitioner alleged in his petition for a writ of habeas corpus that he was prejudiced by defense counsel's deficient performance because the jury was permitted to return a nonunanimous verdict of guilty as to count eight, as it was unclear whether the jury found him guilty as a principal or as an accessory. The habeas court concluded that the petitioner was not prejudiced by any allegedly deficient performance because the petitioner had been acquitted of count seven, which charged him with sexual assault as a principal only, such that no juror logically could have found him guilty as a principal in count eight. The habeas court therefore concluded that the jury must have unanimously found him guilty under count eight as an accessory to M's assault of the victim. The habeas court rendered judgment denying the petition and, thereafter, granted the petition or certification to appeal, and this appeal followed. *Held* that the habeas court properly denied the petition for a writ of habeas corpus, that court having properly determined that the precise harm that the petitioner asserted by defense counsel's deficient performance was not so significant that there was a reasonable probability that the outcome of the trial with respect to count eight would have been different; there was no reasonable probability that some jurors could have convicted the petitioner of sexual assault as a principal on count eight while others could have convicted him as an accessory with respect to that same count, or that the verdict on count eight would have been different had the court not made the instructional mistake, as the jury had before it the amended information, which solely alleged in count eight that the petitioner intentionally aided M in sexually assaulting the victim, the prosecutor had explained during his closing argument that count eight pertained to the petitioner's acts that helped M assault the victim, the jurors acquitted the petitioner of count seven, which had charged the petitioner as a principal only, and there was only a mere possibility that the court's improper instruction on count eight caused juror confusion, which was insufficient to meet the high burden of proving that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the trial as to count eight would have been different.

Argued April 12—officially released July 25, 2017

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Jade N. Baldwin*, for the appellant (petitioner).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Tamara Grosso*, assistant state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Travis Hampton, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly concluded that his claim of ineffective assistance of trial counsel fails on the prejudice prong of the test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Having thoroughly reviewed the record, we conclude that the habeas court properly denied the petition and, accordingly, affirm the judgment.

The following facts, as set forth by our Supreme Court in the petitioner's direct criminal appeal, and procedural history are relevant to this appeal. "At approximately 1:30 a.m. on August 23, 2003, the [petitioner] was with his friend, James Mitchell, when Mitchell received a telephone call from the victim, a young woman he knew, asking for a ride to her home in East Hartford. Mitchell drove his car to the location of the victim and picked her up. The three then drove to a nearby restaurant. After entering the restaurant and remaining there for a while, the [petitioner] and the victim returned to the car, where Mitchell had remained. Mitchell told the victim that he would drive her home, but he did not. Instead, Mitchell began angrily questioning the victim as to the whereabouts of her brother, who, both Mitchell and the [petitioner] suspected, was involved in a romantic relationship with Mitchell's former girlfriend. The victim informed Mitchell and the [petitioner] that her brother was staying at her grandfather's house, but after driving there, Mitchell and the [petitioner] realized that the victim had lied to them. Mitchell then drove first to his mother's house in Hartford, and then to an apartment complex. The victim repeatedly pleaded with Mitchell to take her home, but he did not comply. Mitchell drove his car from the apartment complex and brought the victim and the [petitioner] to a closed gas station near Market Street in Hartford and parked behind the building, where it was dark. . . .

"Mitchell then told the victim to get out of the car because he wanted to talk to her. Mitchell, the [petitioner] and the victim exited the car. The victim, anticipating that 'something bad' was about to happen, started to walk away, but stopped when the [petitioner] took a shotgun out of the car and pointed it at her face. After the victim refused to tell Mitchell her brother's location, Mitchell became angry and ordered the victim to take her clothes off. The victim removed her pants, and Mitchell sexually assaulted her by engaging in vaginal intercourse with her. The [petitioner] kept the shotgun pointed at the victim throughout the assault.

"Angry and scared, the victim pleaded with Mitchell

and the [petitioner] to let her go. Mitchell then gave the victim the choice to climb into a nearby dumpster or attempt to run away. As the victim started running, Mitchell fired the shotgun hitting her in the stomach. The victim continued to run toward the front of the gas station, and Mitchell followed her in the car while the [petitioner] pursued her on foot, holding the shotgun. Despite the victim pleading with the [petitioner] to stop, he shot and wounded her in the right side. The victim, bleeding profusely, ran across Market Street and tried to hide behind some trees on the side of the road. The [petitioner] followed her and shot at her several more times, hitting her in the face and the upper thigh. The victim then dropped to the ground and pretended to be dead. The [petitioner] walked over to the victim, who was lying on the ground, and shot her one final time in her left arm. Thinking that the victim was dead, the [petitioner] got back into the car, which Mitchell was driving, and they drove away. They quickly returned, however, to verify that the victim was dead. The [petitioner] got out of the car, walked over to the motionless victim, kicked her once, and said, 'She's dead.' The [petitioner] and Mitchell then again drove away.

"The victim subsequently was discovered by a passerby and ultimately was taken to the hospital, where, after receiving medical attention, she informed authorities that Mitchell and a person that she did not know, later identified as the [petitioner], had sexually assaulted and shot her. Late in the evening of August 27, 2003, Mitchell and the [petitioner] were arrested." (Footnotes omitted.) *State* v. *Hampton*, 293 Conn. 435, 438–41, 988 A.2d 167 (2009).

Thereafter, the petitioner was charged, via an amended information dated January 17, 2006, with attempt to commit murder in violation of General Statutes §§ 53a-49 (a) and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (A) and 53a-8, conspiracy to commit kidnapping in the first degree in violation of General Statutes §§ 53a-48 and 53a-92 (a) (2) (A), assault in the first degree with a firearm in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8, conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (5), sexual assault in the first degree as a principal in violation of General Statutes § 53a-70 (a) (1), sexual assault in the first degree as an accessory in violation of §§ 53a-70 (a) (1) and 53a-8, conspiracy to commit sexual assault in the first degree in violation of §§ 53a-48 and 53a-70 (a) (1), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). Id., 438.

The petitioner's case was tried before a jury of six. See id., 448 n.12. During the trial, the state presented

evidence of *three* separate sexual acts that the victim had been forced to engage in—vaginal intercourse with Mitchell, fellatio with the petitioner, and vaginal intercourse with the petitioner[2]—although the petitioner only was charged with *two* counts of first degree sexual assault in the amended information—one count encompassing the fellatio and vaginal intercourse allegedly committed by the petitioner personally, and one count encompassing the vaginal intercourse by Mitchell to which the petitioner allegedly was an accessory. More specifically, count seven alleged in relevant part that "the [petitioner] . . . did compel [the victim] . . . to engage in sexual intercourse by the threatened use of force against her which caused her to fear physical injury," and count eight alleged in relevant part that "the [petitioner] . . . did intentionally aid James Mitchell in compelling [the victim] . . . to engage in sexual intercourse by the threatened use of force against her which caused her to fear physical injury."

Notably, during trial, "the [petitioner] did not file a request to charge. Before it charged the jury, the trial court held a charging conference at which it reviewed, page by page, its written charge with the parties. The trial court gave both parties a printed copy of the jury instructions for their review. During the charging conference, with regard to counts seven and eight of the information . . . the trial court specifically inquired of the parties as to whether there would be a unanimity problem because the state had failed to allege in the information which specific acts of sexual intercourse had occurred. In response, the state pointed out that count eight of the information concerned the [petitioner's] participation in aiding Mitchell in Mitchell's sexual assault of the victim. Because the evidence supported a finding that Mitchell had engaged only in vaginal intercourse with the victim, the state noted that there would be only one factual basis upon which the jury could find the [petitioner] guilty, and, thus, there would be no unanimity problem." (Footnote omitted; emphasis omitted.) Id., 445–46.

With regard to unanimity on count seven, the court, the prosecutor, and the court officer engaged in the following colloquy:

"The Court: . . . But there's one sexual assault [charge] in which he's the principal it's alleged?

"[The Prosecutor]: Yes.

"The Court: Even though the testimony involved two sexual assaults?

"[The Prosecutor]: Right. . . .

"The Court: . . . But it's . . . alleged that [the petitioner] had sex with her in two different fashions. . . .

"[The Prosecutor]: She—it's just charged that [the petitioner] forced her to engage in sexual intercourse,

and it's not distinguished as to what type.

"The Court: Well, then the question is, is there any requirement of specific unanimity on that? . . . We'll have to look that up. . . .

"The Court: . . . [M]y issue is particularly as far as the argument is concerned and the charge is concerned. Certainly the jury would not have to believe both.

"[The Prosecutor]: Right.

"The Court: But could you have three believing one type of sexual contact and three believing the other or five and one or whatever permutation you come up with? And that's—do you have any cases for me on that for me to decide on? Do you have any position on that, you can't add another count on sexual assault?

"[The Prosecutor]: No. And there was no request for a bill of particulars, so this is particularized. . . .

"[The Court Officer]: . . . I think it's going to be for the jury to sort it out. If three of them believe oral sex happened and three of them believe vaginal sex happened by the [petitioner] as principal under count seven, then they find him guilty of count seven."

After the colloquy on unanimity, "the trial court solicited additional suggestions from the parties with regards to the jury charge. When the state responded that nothing else was required, the trial court explicitly asked defense counsel whether he had any further changes. Defense counsel responded that his 'only request' related to a conspiracy charge under *Pinkerton* liability.[3] After the trial court addressed that concern, it again directly asked defense counsel, 'Anything else?' to which defense counsel responded, 'No.' . . . After the parties reviewed [a copy of] the revised instructions, the trial court again directly solicited comments from both parties. Defense counsel stated that he had received and reviewed the instructions and that they 'appear[ed] to be in order.' " (Footnotes altered.) Id., 446–47.

Thereafter, in its final charge as to count seven, the court instructed the jury that "the [petitioner] is charged solely as a principal." With respect to count eight, despite the language in that count of the amended information charging the petitioner only as an accessory, the court instructed the jury that the offense "can be proven by the state in any one of the following ways: that the [petitioner] committed the crime as a principal; that the [petitioner] was an accessory to the crime; or, third, that the [petitioner] is guilty by way of the *Pinkerton* theory of vicarious liability."[4] The court "instructed the jury that it did not have to be unanimous in deciding whether the [petitioner] was guilty as a principal or an accessory." Id., 447–48. In conjunction with the court's charge, a verdict form was submitted to the jury.

"At the end of its jury instructions, the trial court asked the parties whether either took exception to the charge, and neither party did. The jury ultimately acquitted the [petitioner] of count seven, which alleged sexual assault in the first degree as a principal, and convicted him of the remaining charges, including sexual assault in the first degree as charged in the eighth count." Id., 448. The verdict form indicated that, as to count eight, the petitioner was found "guilty by way of principal or accessory liability" as opposed to *Pinkerton* vicarious liability. He subsequently was sentenced to a total effective sentence of fifty-nine years imprisonment.

The petitioner appealed from the judgment of conviction. On direct appeal, he claimed "that the trial court improperly: (1) denied his motion to suppress a written confession that he had made after waiving his *Miranda*[5] rights; (2) failed to instruct the jurors that they had to agree unanimously on the factual basis [i.e., whether he acted as an accessory or as a principal] underlying the sexual assault charges against the [petitioner];[6] and (3) failed to instruct the jurors adequately on the specific intent necessary to convict the [petitioner] as an accessory on the charges of attempt to commit murder, kidnapping in the first degree, assault in the first degree and sexual assault in the first degree." (Footnotes altered.) Id., 438. Our Supreme Court affirmed the judgment of conviction. In doing so, it specifically concluded that the petitioner had waived his second claim regarding nonunanimity as to count eight and, thus, declined to review it: "The record in the present case . . . demonstrates that defense counsel had been made aware of the issue regarding the unanimity charge not once, but twice, and in both instances, despite requests from the trial judge for any changes, additions or deletions, defense counsel stated that he had none, thus assenting to the charge that was given." Id., 450.

Subsequently, on November 19, 2015, the petitioner filed an amended petition for a writ of habeas corpus alleging ineffective assistance of trial counsel. The petitioner alleged that the performance of his trial counsel, Donald O'Brien, was constitutionally deficient because he failed to object to the jury instructions given by the court as to count eight of the amended information, thereby permitting the jury to reach a nonunanimous verdict on that count.[7] On March 29, 2016, the habeas court, *Sferrazza, J.*, held a trial in which it heard testimony from O'Brien and Dean Popkin, a Connecticut criminal defense attorney.

After trial, the habeas court denied the petition for a writ of habeas corpus. In its written memorandum of decision dated May 6, 2016, the court assumed, arguendo, that O'Brien had performed deficiently by failing to object to the court's error in instructing the jurors that they could find the petitioner guilty on count eight as a principal in light of the fact that the state

had alleged only accessorial liability in that count of its amended information. The court concluded, however, that the petitioner had failed to establish prejudice, stating: "In order to return a not guilty verdict as a principal of the sexual assault charge alleged in count seven, the jury was clearly and properly instructed that the jury had to agree unanimously on that acquittal. By unanimously determining that the state had failed to prove the petitioner guilty as a principal, no juror logically could have then found him to be guilty of sexual assault as a principal in count eight. Such verdicts were mutually exclusive. The court draws the only reasonable conclusion that the jury must have unanimously found the petitioner guilty of sexual assault as an *accessory* to Mitchell's rape." (Emphasis in original.) This appeal followed.

As an initial matter, we set forth the applicable standard of review and principles of law. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . [T]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

"The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut." *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 549, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004). "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a [petitioner] must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment [to the United States constitution]. . . . To satisfy the prejudice prong, a [petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner]."

*Strickland* v. *Washington*, supra, 697.

In the present appeal, the precise nature of the petitioner's claim is somewhat unclear. In his brief, he appears to argue that his trial counsel's failure to object to the court's instruction on count eight was constitutionally deficient performance because he had not been charged as a principal in count eight of the amended information, yet the court nevertheless instructed the jury that it could find him guilty as a principal, as an accessory, or under the *Pinkerton* theory of vicarious liability. In light of the fact that (1) the habeas court assumed that the petitioner had met his burden to prove deficient performance, and (2) our Supreme Court, in the petitioner's direct appeal, indicated that the court should not have instructed the jury on principal liability because it had not been pleaded in count eight of the information,[8] the question of whether counsel's performance was deficient is not truly in dispute.[9] Rather, the critical inquiry for this court is to focus on the precise harm that the petitioner asserts was created by this deficient performance and whether that harm is so significant that there is a reasonable probability that the outcome of the trial, with respect to count eight, would have been different.

In conducting this inquiry, we believe it is important, given that the alleged prejudice must flow from the precise claim of ineffective assistance being made, to note several points that are clear to us. First, the petitioner does not argue that he was prejudiced because the jury was permitted to consider a theory of liability of which he had not received notice.[10] In other words, he has not argued, in his attempt to establish prejudice, that had he known the state's true theory of liability for count eight, he would have defended the count differently, and that had he done so, there is a reasonable probability that he would have been acquitted of that count.

Second, in his attempt to establish that he was prejudiced by his trial counsel's deficient performance, the petitioner has not argued that the guilty verdict on count eight was factually and/or legally inconsistent with the verdict of acquittal on count seven. Even if his counsel's failure to object to the charge as given ultimately led to factually inconsistent verdicts on counts seven and eight, such a result, as a matter of law, would not constitute prejudice: "[I]t is well established that *factually* inconsistent verdicts are permissible. [When] the verdict could have been the result of compromise or mistake, we will not probe into the logic or reasoning of the jury's deliberations or open the door to interminable speculation." (Emphasis in original; internal quotation marks omitted.) *State* v. *Nash*, 316 Conn. 651, 659, 114 A.3d 128 (2015).

If the petitioner had attempted to argue that the verdicts are *legally* inconsistent, he would have met a simi-

lar lack of success. Claims regarding legally inconsistent verdicts generally are divided into two categories. "The first category involves cases in which it is claimed that two *convictions* are inconsistent with each other as a matter of law or are based on a legal impossibility. . . . Such convictions . . . are reviewable . . . . The second category involves cases in which the defendant claims that one or more guilty verdicts must be vacated because there is an inconsistency between those guilty verdicts and a verdict of *acquittal* on one or more counts, or an acquittal of a codefendant. . . . It is well established that such inconsistent verdicts are not reviewable and the defendant is not entitled to relief . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Anderson*, 158 Conn. App. 315, 332–33, 118 A.3d 728, cert. granted on other grounds, 319 Conn. 908, 123 A.3d 437 (2015) (appeal withdrawn May 4, 2016). Thus, even if the petitioner had argued that he was prejudiced by legally inconsistent verdicts on counts seven and eight, this result would not constitute prejudice, as a matter of law, because it is not proper for an appellate court to compare a verdict of acquittal on one count with a verdict of guilt on another count for purposes of determining legal consistency.

This brings us then to the petitioner's actual argument regarding prejudice.[11] In terms of what we can divine from his brief, the petitioner appears to argue that the court's instruction that the petitioner could be found guilty as a principal on count eight was prejudicial because it potentially sanctioned a nonunanimous verdict by creating a scenario under which the jury could convict him of the charge in count eight without all of the jurors agreeing that the petitioner assisted Mitchell by holding a gun to the victim's head so that Mitchell could commit the sexual assault. In other words, the petitioner argues that some jurors may have convicted him on the basis that the petitioner had held a gun to the victim's head so that Mitchell could commit a sexual assault, while others voted to convict on the basis that the petitioner, as a principal, had compelled the victim to perform fellatio or that he had penetrated her vaginally.[12]

As previously discussed, "[t]o satisfy the prejudice prong, a [petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, supra, 286 Conn. 713. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Apodaca* v. *Commissioner of Correction*, 167 Conn. App. 530, 535, 146 A.3d 42 (2016). Given this standard for prejudice, we are not persuaded that there is a reasonable probability that some members of the jury could have convicted him

as a principal on count eight and that others could have convicted him as an accessory on that same count. More specifically, we agree with the habeas court's assessment that the verdict of acquittal as to count seven leads us to conclude that there is not a reasonable probability that the verdict on count eight would have been different had the court not made the instructional mistake.

The habeas court ruled as follows in its memorandum of decision: "In order to return a not guilty verdict as a principal of the sexual assault charge alleged in count seven, the jury was clearly and properly instructed that [it] had to agree unanimously on that acquittal. By unanimously determining that the state had failed to prove the petitioner guilty as a principal, no juror could logically have then found him to be guilty of sexual assault as a principal in count eight. Such verdicts were mutually exclusive. The court draws the only reasonable conclusion that the jury must have unanimously found the petitioner guilty of sexual assault as an *accessory* to Mitchell's rape." (Emphasis in original.)

First, the habeas court inartfully used the phrase "mutually exclusive" to describe the verdict of acquittal on count seven and the verdict of guilt on count eight. The term "mutually exclusive," as used in our case law, refers to two *convictions* that are inconsistent with each other as a matter of law or are based on a legal impossibility. See *State* v. *Nash*, supra, 316 Conn. 659. As previously discussed herein, such convictions are reviewable and cannot withstand a challenge if "the existence of the essential elements for one offense negates the existence of [one or more] essential elements for another offense of which the defendant also stands convicted." (Internal quotation marks omitted.) Id. The present case, however, does not involve a claim contesting two legally inconsistent convictions; accordingly, the habeas court's use of the term here does not fit. Nevertheless, we find the remainder of its reasoning persuasive.

In count seven, the petitioner was charged with first degree sexual assault *as a principal only*, and the court properly instructed the jury accordingly, expressly stating that, for purposes of this case, the jury should consider sexual intercourse to be vaginal intercourse or fellatio. Because we presume the jury properly followed the trial court's instructions in the absence of evidence to the contrary; *State* v. *Peeler*, 271 Conn. 338, 371, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005); we assume that the jury did not limit its consideration of count seven to only one of the two possible acts of sexual assault allegedly perpetrated by the defendant as a principal. Rather, we presume that it considered *both* whether the petitioner principally compelled the victim to engage in vaginal intercourse with him *and* whether the petitioner princi-

pally compelled the victim to perform fellatio on him. Given that the jury acquitted the petitioner of count seven, we must, therefore, presume that it unanimously concluded that the state failed to prove beyond a reasonable doubt either of the two sexual acts that the state alleged he committed as a principal.

Thus, if the jurors unanimously acquitted the petitioner of acting as the principal in committing the two separate acts of sexual assault alleged in count seven, this left only one act of sexual assault for them to consider in the context of count eight: vaginal penetration of the victim by Mitchell. Given this, and in light of the fact that the verdict form for count eight indicated that the petitioner was found guilty "as a principal or accessory," the most reasonable explanation for the verdict on count eight is that the jury found the petitioner guilty on a theory of accessorial liability for aiding Mitchell in sexually assaulting the victim.[13] The likelihood of this outcome becomes even greater considering the fact that the jury had before it both the amended information for count eight, which solely alleged that the petitioner "did intentionally aid James Mitchell" in sexually assaulting the victim, and the closing argument of the state, in which the prosecutor stated, "We're charging him [in count eight] . . . that he aided, that he helped Mr. Mitchell in engaging in sexual intercourse with [the victim]."[14]

Ultimately, the most that can be said of the petitioner's prejudice argument here is that it was merely *possible* that the court's improper instructions on count eight caused juror confusion as to whether some of the jurors could have decided that the state met its burden of proof with respect to one of the acts of sexual assault, while others could have decided that the state met its burden of proof with respect to another act of sexual assault. For the petitioner to prevail on the prejudice prong of his habeas claim of ineffective assistance of counsel, however, the high burden is on him to prove that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the trial as to count eight would have been different. The petitioner has failed to show that his theory of juror nonunanimity was anything more than speculative and, thus, has not undermined confidence in the outcome. We, therefore, conclude that the habeas court did not improperly conclude that the petitioner's claim of ineffective assistance of trial counsel fails on the prejudice prong of the *Strickland* test. Accordingly, we affirm the judgment of the habeas court.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court subsequently granted certification to appeal from the judgment pursuant to General Statutes § 52-470 (b).

[2] As summarized in its closing argument before the jury, the state theorized that the sexual assaults occurred as follows: "[The victim] told you that after James Mitchell forced her to engage in sexual intercourse, this [peti-

tioner] was sitting there holding a shotgun basically between his legs while he relaxed on the backseat of the car and watched James Mitchell force her . . . to engage in penile-vaginal intercourse. . . . [The victim] told you that while she had a shotgun pointed at her head she did put her mouth once, twice down on [the petitioner's] penis. . . . [The petitioner] did not ejaculate, but . . . he then gave the shotgun over to Mr. Mitchell, and [the petitioner] then attempted to have penile-vaginal intercourse with [the victim]. In fact, he did place his penis . . . into her vagina briefly."

[3] See *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 180, 90 L. Ed. 1489 (1946).

[4] In the petitioner's direct appeal, our Supreme Court commented on this aspect of the court's instructions as follows: "During the charging conference, the [petitioner], the state and the trial court discussed that, specifically as to count eight, the [petitioner] was charged and could be found liable as a principal, as an accessory, or under the *Pinkerton* doctrine of vicarious liability. . . . The trial court thus charged the jury in accordance with this discussion. This, however, was incorrect. Count eight of the information alleged *only* that the [petitioner] had acted as an accessory by aiding Mitchell in sexually assaulting the victim. Accordingly, the trial court's jury instruction as to count eight was inconsistent with the crime charged in the information. Although [t]he trial court cannot by its instruction change the nature of the crime charged in the information . . . it is significant that neither the state nor the [petitioner] took exception to this instruction at trial, and that, on appeal, the [petitioner] has not challenged this specific aspect of the instruction. We therefore treat this claim as abandoned." (Citations omitted; emphasis altered; internal quotation marks omitted.) *State* v. *Hampton*, supra, 293 Conn. 446 n.9.

[5] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] With regard to this claim, the petitioner challenged the verdicts on both of the sexual assault charges, counts seven and eight. Because he was acquitted of the sexual assault charged in count seven of the information, however, our Supreme Court stated that he was not aggrieved by that verdict, and, thus, it reviewed this claim only as it applied to the petitioner's conviction on count eight. *State* v. *Hampton*, supra, 293 Conn. 444–45 n.7.

[7] The amended petition also included a second claim of ineffective assistance of trial counsel for "failure to impeach and/or cross-examine [the] victim with prior trial testimony." That claim, however, was withdrawn prior to the start of evidence at the habeas trial.

[8] See footnote 4 of this opinion.

[9] It should be noted that the petitioner does not contend that his claim of ineffective assistance of trial counsel arose from O'Brien's failure to request a unanimity charge with respect to the underlying factual basis for count *seven*. More specifically, he does not claim that the possible lack of unanimity on count eight was due to the fact that the jurors should have been instructed that they could convict the petitioner of count seven only if they unanimously agreed that he personally committed a sexual assault against the victim by forcing her to perform fellatio *or* if they unanimously agreed that he personally committed the assault by forcing her to engage in vaginal intercourse.

Pursuant to *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991), "[e]ven if the instructions at trial can be read to have sanctioned such a nonunanimous verdict . . . we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." (Internal quotation marks omitted.) *State* v. *Jessie L. C.*, 148 Conn. App. 216, 232, 84 A.3d 936, cert. denied, 311 Conn. 937, 88 A.3d 551 (2014). Significantly, "case law provides that the alternative means of performing sexual intercourse are *not* conceptually distinct. See *State* v. *Anderson*, 211 Conn. 18, 35, 557 A.2d 917 (1989) ('[t]he several ways in which sexual intercourse may be committed under General Statutes § 53a-65 [2] are only one conceptual offense')." (Emphasis added.) *State* v. *Griffin*, 97 Conn. App. 169, 184 n.7, 903 A.2d 253, cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006). Thus, this court held in *Griffin* that "the court's instruction that sexual intercourse included vaginal intercourse *or* cunnilingus did not constitute a nonunanimous instruction of two conceptually distinct alternatives." (Emphasis in original.) Id. Likewise, in the present case, the petitioner could not have prevailed on a claim that his counsel was deficient for failing to request a unanimity instruction as to whether the act of sexual intercourse

underlying count seven was fellatio or vaginal intercourse, because the two acts are not two conceptually distinct alternatives for purposes of surmounting the first prong of *Famiglietti*.

[10] "[T]he United States Supreme Court has explained that [t]o uphold a conviction on a charge that was neither alleged in an [information] nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused. . . . Reviewing courts, therefore, cannot affirm a criminal conviction based on a theory of guilt that was never presented to the jury in the underlying trial. . . . To rule otherwise would permit trial by ambuscade. . . . Whether a defendant has received constitutionally sufficient notice of the charges of which he was convicted may be determined by a review of the relevant charging document, the theory on which the case was tried and submitted to the jury, and the trial court's jury instructions regarding the charges." (Citations omitted; internal quotation marks omitted.) *State* v. *King*, 321 Conn. 135, 148–50, 136 A.3d 1210 (2016).

[11] We note that the petitioner does not argue that his counsel's deficient performance or the court's instructional error was structural in nature and that he, therefore, is excused from demonstrating prejudice under the sixth amendment to prevail on his claim. "Structural [error] cases defy analysis by harmless error standard because the entire conduct of the trial, from beginning to end, is obviously affected . . . . These cases contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself . . . . Such errors infect the entire trial process . . . and necessarily render a trial fundamentally unfair . . . . Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally unfair." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 645, 153 A.3d 1264 (2017). Because the petitioner does not make this assertion in his brief or cite to any structural error cases, he has the burden of demonstrating that prejudice resulted from his trial counsel's deficient performance in failing to object to the court's instructions on count eight.

[12] Our Supreme Court expressly has held, as a general matter, that principal and accessorial liability are *not* conceptually distinct from each other, and, thus, a jury verdict on a particular count should be regarded as unanimous even if some jurors concluded that the defendant was an aider and abetter, while other jurors concluded that he was the principal. *State* v. *Smith*, 212 Conn. 593, 605, 563 A.2d 671 (1989). In the present case, however, the state did not allege the occurrence of merely *one* act of sexual assault for which it would have been proper for half the jurors to believe the petitioner was guilty under a theory of principal liability and half the jurors to believe he was guilty under a theory of accessorial liability; rather, it alleged the occurrence of *three* separate acts of sexual assault. The petitioner thus appears to argue that, given the instructions on count eight, the jury could have believed it proper for each juror to individually determine that any one of the three acts of sexual assault, two alleging principal liability and one alleging accessorial liability, was proven beyond a reasonable doubt, resulting in a nonunanimous guilty verdict.

[13] By so concluding, we do not mean to suggest or presume that the jury must have decided counts seven and eight in any particular order. The reality, however, is that, ultimately, the jury acquitted him of the two acts of sexual assault of which the state accused him as a principal, and found him guilty on count eight.

[14] Specifically, the prosecutor stated: "[L]et me go to count eight because we're going to talk about some of these things together. . . . We're charging him . . . that he aided, that he helped Mr. Mitchell in engaging in sexual intercourse with [the victim]. . . . The question for you is, looking at the facts here, did James Mitchell force [the victim] to engage in sexual intercourse when a shotgun was pointed at her and he told her to take off her clothes? . . . I submit to you that the [petitioner] had the gun when James Mitchell forced her to bend over and he placed his penis into her vagina . . . ."